BRUCE T. BEESLEY, #1164
LAURY M. MACAULEY, #11413
**LEWIS AND ROCA LLP**
50 West Liberty Street, Ste. 410
Reno, Nevada 89501
(775) 823-2900
(775) 823-2929 Facsimile
bbeesley@lrlaw.com
lmacauley@lrlaw.com

Counsel for COMPASS BANK

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | Case No.: BK-10-50808 |
| LESARRA ATTACHED HOMES, L.P. | Chapter 11 |
| Debtor, | **OBJECTION OF COMPASS BANK TO DEBTOR'S REVISED FIRST AMENDED DISCLOSURE STATEMENT; AND REQUEST FOR EXTENSION OF TIME TO MAKE 1111(b) ELECTION** |
| | Hearing Date: August 31, 2010<br>Hearing Time: 2:00 p.m. |

**TO THE HONORABLE GREGG W. ZIVE AND ALL PARTIES IN INTEREST:**

COMPASS BANK ("Compass Bank"), by and through its undersigned counsel, hereby files this Objection to the Debtor's Revised First Amended Disclosure Statement; and Request For Extension of Time to Make 1111(b) Election, and respectfully states as follows:

I.

**PRELIMINARY STATEMENT**

The Debtor, through its revised first amended plan of reorganization and supporting disclosure statement, seeks to abrogate many of Compass Bank's rights as a secured creditor

under the Bankruptcy Code while patently violating the Absolute Priority Rule. In essence, the Debtor's unconfirmable plan proposes to sell its sole real estate development property at a closed sale to its own insiders, while attempting to shut out Compass Bank from making a credit bid at the private sale and/or an election under Bankruptcy Code Section 1111(b), in clear violation of Ninth Circuit law.

Moreover, the Debtor's disclosure statement inadequately describes the constituent make-up of the proposed insider buyers and/or contains any information relating to their available financing which might provide a basis upon which a creditor could assess their ability to complete the proposed sale and to consummate the plan. Finally, the plan appears to avoid any distribution to Compass Bank for any of its personal property collateral and seeks to inappropriately release guarantors of the Debtor's obligations to Compass Bank.

For these reasons, the Amended Disclosure Statement does not comply with the requirements of the Bankruptcy Code and should not be approved by the Court. However, if the Court approves the Disclosure Statement as proposed, Compass Bank respectfully requests an extension of time to make its Section 1111(b) election until after the requested valuation hearing has concluded.

## II.

## FACTUAL BACKGROUND

On March 12, 2010, Lesarra Attached Homes, L.P., ("Debtor"), filed a voluntary petition for relief under the provisions of Chapter 11 of the Bankruptcy Code ("Petition Date"), initiating the above-referenced Chapter 11 case.

Compass Bank, the senior secured creditor and largest unsecured creditor of the Debtor, is an Alabama banking corporation and successor-in-interest to Guaranty Bank ("Guaranty"),

having duly purchased Guaranty's interest by and through the Federal Deposit Insurance Corporation ("FDIC") on August 21, 2009.

As of the Petition Date, Compass Bank was owed $18,125,152.31 by the Debtor, secured by substantially all of the Debtor's property, including certain real property consisting of residential condominium units and partially improved land in the City of El Dorado Hills, in El Dorado County, California ("El Dorado Property"), as well as related personal property.[1]

On May 18, 2010, Compass Bank filed the Compass Bank's Motion for Relief from Automatic Stay [11 U.S.C. §362] ("Stay Motion") [Docket No. 23].

Subsequent to the filing of the Motion, and on the 90th day after its Petition Date, on June 10, 2010, the Debtor filed a Debtor's Disclosure Statement ("Disclosure Statement") [Docket No. 33] and a Debtor's Plan of Reorganization ("Plan") [Docket No. 34].

The Debtor's Disclosure Statement and Plan initially proposed a reorganization to be accomplished through the piecemeal liquidation of all of Compass Bank's real property collateral (the El Dorado Property) on a unit by unit basis, with the sale proceeds to be paid to Compass Bank on account of its Class 1 secured claim at a rate of 95%.

On June 22, 2010, a hearing was held on Compass Bank's Stay Motion, at which time the Court took the Stay Motion under advisement and ordered that the Debtor make an adequate protection payment in the amount of $40,000 to Compass Bank no later than July 15, 2010. Thereafter, on July 15, 2010, a payment of $40,000 was made to Compass Bank by the Debtor.

---

[1] *See*, Declaration of Russ Rhome in Support of Compass Bank's Motion for Relief from Automatic Stay ("Rhome Declaration"), filed with this Court on May 18, 2010, as Docket No.25. Attached to the Rhome Declaration are the essential documents relating to the Bank's secured claim, including the Construction Deed of Trust. Compass Bank hereby requests that this Court take judicial notice of the Rhome Declaration with attached documents, pursuant to Federal Rule of Evidence 201.

On August 5, 2010, the Debtor filed its Debtor's Revised First Amended Disclosure Statement ("Amended Disclosure Statement") and Debtor's Revised First Amended Plan of Reorganization ("Amended Plan"). The Amended Disclosure Statement and Plan contained a complete "about face" in the course of the Debtor's proposed reorganization—instead of proposing a serial sale of the Debtor's real property condominium units, the Debtor then proposed a private sale of the entire El Dorado Property to El Dorado Enterprises, an entity consisting of the Debtor's "insiders/limited partners," with the sale proceeds to be paid to Compass Bank as the "indubitable equivalent" of its claim in an amount to be determined after a valuation hearing before this Court. In the Amended Disclosure Statement and Amended Plan, the Debtor contends that Compass Bank has no right to credit bid at the property sale nor to make an election under Section 1111(b) of the Bankruptcy Code.

A continued hearing on Compass Bank's Stay Motion is set concurrently with the instant hearing on the Debtor's Amended Disclosure Statement.

### III.

### ARGUMENT

**A. The Amended Disclosure Statement Should Not Be Approved, Because It Does Not Provide Adequate Information to Allow Creditors to Make an Informed Judgment About the Proposed Amended Plan.**

The Amended Disclosure Statement cannot be approved, because it does not contain adequate information as required by the Bankruptcy Code. "Adequate information" is defined in Section 1125(a)(1) of the Bankruptcy Code as,

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . that would enable . . . a hypothetical investor [typical of the holders of claims or interests in the

case] of the relevant class to make an informed judgment about the plan.

. . .

11 U.S.C. § 1125(a)(1). The determination of what constitutes "adequate information" in a disclosure statement is a subjective test and made on a case by case basis. In re Brotby, 303 B.R. 177, 193 (9th Cir. B.A.P. 2003).

Here, the Debtor's Amended Disclosure Statement does not provide adequate information regarding the identity of the principals of "El Dorado Enterprises" and/or their availability to finance the proposed purchase of the El Dorado Property. The Debtor's Amended Plan is premised entirely on a private sale of the El Dorado Property to "El Dorado Enterprises," which is described as only a "Nevada corporation qualified to do business in California." (Amended Plan, p.7, ¶26.) No further description of the proposed, exclusive buyer is provided, except that the Debtor does admit that El Dorado Enterprises is "owned by insiders/limited partners of the Debtor"—the identity of the constituent members of the buyer entity is conspicuously omitted. (*See*, Amended Disclosure Statement, p. 14, ¶4.)

Further, the Amended Disclosure Statement is entirely devoid of any information as to the financial condition of El Dorado Enterprises and/or the source of the funds to be used to buy the El Dorado Property so as to provide creditors with assurance that it can, indeed, consummate the Amended Plan as proposed. The Amended Disclosure Statement indicates only that the entity is capitalized with $250,000, although the Debtor contends that the subject real property (without including personal property) to be purchased is valued at somewhere between $2.5 million and $5 million as of August/September 2010. (Amended Disclosure Statement, p. 6.)

Clearly, with absolutely no information as to the identity and financing availability of the proposed insider buyers, a "hypothetical investor" would be unable to make an informed

judgment as to the propriety of the Debtor's proposed Amended Plan based on the content of the Amended Disclosure Statement. Moreover, contrary to the Debtor's assertions regarding the status of "El Dorado Enterprises" as a "Nevada corporation," listings for "El Dorado Enterprises, Inc." on the Nevada Secretary of State website is listed as "revoked" and "permanently revoked." (*See*, Declaration of Laury M. Macauley in Support of Objection of Compass Bank to Debtor's Revised First Amended Disclosure Statement; and Request for Extension of Time to Make Section 1111(b) Election, filed concurrently herewith and incorporated herein. Thus, there is no question that the Debtor's Amended Disclosure Statement fails to satisfy the requirements of Bankruptcy Code Section 1125(a)(1).

**B. Further, The Amended Disclosure Statement Should Not Be Approved, Because the Debtor's Proposed Amended Plan is Not Confirmable as a Matter of Law.**

A disclosure statement that describes a plan of reorganization that cannot be confirmed as a matter of law should not be approved. *See*, In re Main Street AC, Inc., 234 B.R. 771, 775 (Bkrtcy.N.D.Cal. 1999); In re 266 Washington Associates, 141 B.R. 275, 288 (Bkrtcy.E.D.NY 1992). Where a plan is patently unconfirmable, the service of a disclosure statement pending a confirmation hearing will only cause unnecessary delay and expense to the estate. In re S.E.T. Income Properties, III, 83 B.R. 791, 792 (Bkrtcy. N.D. Okla. 1988); *see*, *also*, In re Valrico Square Limited Partnership, 113 B.R. 794, 796 (Bkrtcy.S.D.Fla. 1990)("soliciting votes and seeking court approval on a clearly fruitless venture is a waste of time of the Court and of the parties").

Here, the Amended Disclosure Statement proposed by the Debtor clearly sets forth an Amended Plan that cannot be confirmed as a matter of law for a myriad of reasons.

### 1. The 363(k) Sale Proposed by the Amended Plan Allows No Credit Bid By The Senior Secured Creditor, Compass Bank.

First, the Debtor's Amended Plan attempts to improperly abrogate Compass Bank's right to credit bid at the proposed sale of its collateral.

Bankruptcy Code Section 363(k) clearly mandates that a secured creditor may credit bid at a sale of estate property to be performed pursuant to subdivision (b) of that provision. Nevertheless, the Debtor proposes that Compass Bank's collateral be sold at a private sale to its insiders vis-à-vis an entity entitled "El Dorado Enterprises" and contends that Compass Bank has no right to credit bid its claim.

In support of this contention, the Debtor cites a lone case from the Fifth Circuit entitled In re Pacific Lumber Co., 584 F.3d 229 (5th Cir. 2009), which held that payment to a secured creditor of the "indubitable equivalent" of its claim under Bankruptcy Code Section 1129(b)(2)(A)(iii) obviated the mandate of Section 363(k). However, the Fifth Circuit's decision in *Pacific Lumber* has not been adopted in the Ninth Circuit, and the Debtor has advanced no authority for its adoption by this Court and for the abrogation of Compass Bank's right to credit bid at a sale of its collateral.

Certainly, the circumvention of a secured creditor's right to credit bid at a private sale of its collateral was not the intent of the Code's drafters. As stated by *Collier on Bankruptcy*:

> It is…the clear intent of the drafters of the Code to protect the nonrecourse secured creditor by permitting such creditor to have recourse against the debtor, if the creditor is not permitted to bid in the amount of such creditor's debt in connection with a sale of the creditor's collateral. For this reason, property encumbered by a lien in favor of a nonrecourse secured creditor should not be sold at private sale or, if the property is not sold at auction, the secured creditor should be allowed to match any offer made by a prospective purchaser at private sale.

7 *Collier on Bankruptcy* ¶1111.03[2][b][i] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

Moreover, although the Debtor couches the treatment of Compass Bank's secured claim under Bankruptcy Code Section 1129(b)(2)(B)(iii), the Amended Disclosure Statement clearly describes a private sale of the Property under Section 1129(b)(2)(B)(ii) to which the right to credit bid would certainly attach. See, In re California Hancock, Inc., 88 B.R. 226, 229-30 (9th Cir. B.A.P. 1988).

Alternatively, should this Court decide to adopt the Fifth Circuit holding and determine that Compass Bank is not allowed to credit bid at the proposed private sale, it should then, at a minimum, be permitted to make an election under Bankruptcy Code Section 1111(b) as to the treatment of its claim, as explained hereinbelow.

**2. The Amended Plan Violates The Absolute Priority Rule.**

Second, the Amended Plan, if implemented as proposed by the Debtor, would violate the "Absolute Priority Rule."

The Amended Plan cannot be approved as a consensual plan under Bankruptcy Code Section 1129(a)(8) over the objection of its impaired, Class 1 creditor, Compass Bank, and, thus, the Debtor will have to comply with the "cramdown" requirements of the Bankruptcy Code in order to obtain confirmation.

Pursuant to Bankruptcy Code Section 1129, a debtor may "cramdown" a nonconsensual plan of reorganization only if its plan is "fair and equitable" as to each class of claims that is impaired thereunder. 11 U.S.C. §1129(b)(1). A debtor has the burden of proving that its Chapter 11 plan complies with the statutory requirements of Section 1129(a) and (b) by a preponderance of the evidence. In re Sagewood Manor Associates Limited Partnership, 223 B.R. 756, 761 (Bkrtcy.D.Nev. 1998).

Courts have found that, inherent in the "fair and equitable" standard, is the "the Absolute Priority Rule," which, loosely described, prohibits any junior classes from participating in any way in a reorganization so long as any senior class dissents and is not paid in full. *See*, 7 *Collier on Bankruptcy* ¶1129.03[4][a][i] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

Here, the Debtor's Amended Plan purports to grant "El Dorado Enterprises" the exclusive right to buy the El Dorado Property, notwithstanding the fact that this entity is owned and controlled by "insiders/limited partners" of the Debtor. Thus, the Amended Plan clearly violates the "Absolute Priority Rule" of the Bankruptcy Code, pursuant to the Supreme Court's ruling in Bank of America Nat. Trust and Sav. Assn. v. 203 North LaSalle Street Partnerships (203 N. LaSalle), 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999).

In *203 N. LaSalle*, the debtor's plan of reorganization provided its former equity holders with an exclusive opportunity to receive ownership interests in the reorganized debtor in exchange for a substantial capital investment while its unsecured creditors received less than a full payment on account of their claims. The unsecured creditors objected to the plan on the grounds that it violated the Absolute Priority Rule by providing a recovery to the equity holders when the creditors had not been paid in full. In response, the debtors asserted that the additional investment being contributed by the equity holders was "new value" and, thus, the treatment in the plan constituted an exception to the "Absolute Priority Rule." Without determining whether the purported "new value" exception might otherwise be valid in other circumstances, the Supreme Court unequivocally held the "Absolute Priority Rule" cannot be satisfied when a plan gives equity holders the exclusive right to purchase valuable property of the estate. *Id.*

The rejected plan proposal in *203 N. LaSalle* is identical to that presented by the Debtor in its Amended Plan. The Debtor boldly proposes to give their "insider/limited partners" the

exclusive right to purchase the El Dorado Property at the "valuation" price, while taking away the secured creditors' rights to credit bid at this closed sale. Moreover, this exclusive right to purchase the Property is granted to the insiders, notwithstanding the fact that the Debtor's unsecured creditors, including Compass Bank, receive no distribution under the proposed Amended Plan. (*See*, Amended Disclosure Statement, p. 12.) And, although some courts have upheld the "new value" exception to the Rule, the Debtor has provided no evidence regarding any "value" provided by its insiders. For this reason, the Amended Plan violates the "Absolute Priority Rule" and cannot be confirmed, precluding approval of the Amended Disclosure Statement.

### 3. The Amended Plan Fails To Provide for a Distribution to Compass Bank on Account of Its Personal Property Collateral.

Third, the Amended Plan is not confirmable on its face, because it does not provide for an appropriate distribution to Compass Bank on account of its personal property collateral.

The Amended Plan proposes that Compass Bank, as a "Class 1 Secured Claim," retain its lien on "improved real property" and then to be paid the secured portion of its claim in an amount to be established after a valuation hearing before this Court. (Amended Plan, p. 13, ¶1.) However, this proposed treatment fails to include any distribution to Compass Bank for its personal property collateral.

The Construction Deed of Trust securing the Debtor's obligation to Compass Bank encumbers not only the real property described in the Amended Disclosure Statement, but also specific personal property, including, but not limited to, "all equipment, fixtures, furnishings, inventory, supplies, chattels, and articles of personal property (the "Personal Property")…now or

hereafter attached to or used in or about the Improvements…" (*See,* Rhome Declaration, Exh. 3.)

Therefore, there is no question that Compass Bank's secured interest attaches to personal property.  Nevertheless, through the Amended Plan, the Debtor attempts to retain personal property which clearly constitutes the collateral of Compass Bank.  This is a patent violation of Bankruptcy Code Section 1124(1) which requires that a plan of reorganization "leaves unaltered the legal, equitable, and contractual rights" of a creditor.

**4.  The Amended Plan Purports to Circumvent a Section 1111(b) Election by Compass Bank.**

Fourth, the Amended Plan cannot be confirmed, because it seeks to abrogate Compass Bank's right to make an election under Bankruptcy Code 1111(b) as to the treatment of its secured claim.

Bankruptcy Code Section 1111(b) allows an undersecured creditor to elect to have its claim treated as secured to the full extent of its allowed claim in exchange for releasing its right to an unsecured claim for its deficiency.  Nevertheless, the Debtor, in its Amended Plan, contends that the 1111(b) election "is not available to either the Class 1 [Compass Bank] or Class 2 secured creditors, given the sale of the Property to El Dorado Enterprises for the value established for the Property, pursuant to 11 U.S.C. §506(b)." (Amended Disclosure Statement, p. 14, ¶5.)

The Debtor cites absolutely no case or statutory authority to support this attempt to circumvent Compass Bank's right under the Bankruptcy Code Section 1111(b).  And, indeed, the election is said to provide protection in cases precisely like here where a debtor might otherwise sell the property without fully paying the secured obligation.  *See,* In re Sunflower Racing, Inc.,

226 B.R. 673 (D.Kansas 1998). Even the Fifth Circuit in the *Pacific Lumber* case, cited by the Debtor, acknowledged that the secured creditor in that case had not made the 1111(b) election, implying that the result would be different if it had. See, Pacific Lumber, *supra*, at p. 246, fn. 21.

Moreover, courts have specifically declined to allow a debtor to sell property in a private sale where the secured creditor is to be denied the right *both* to credit bid and to make its election under Section 1111(b). See, *e.g.*, In re 222 Liberty Associates, 108 B.R. 971, 978 (Bkrtcy.E.D.Pa. 1990).

Therefore, despite the Debtor's unsupported contention, Compass Bank is entitled to make an 1111(b) election, and the Amended Plan's prohibition of the election by the Debtor's secured creditors makes it unconfirmable under the Bankruptcy Code as a matter of law. And, if Compass Bank decides to exercise its option and make the Section 1111(b) election, the Debtor's Amended Plan, as presently proposed, would be inoperable, because Compass Bank would be entitled to receive, on account of its claim, payments equal to the entire amount of its claim and of a present value equal to the amount of its collateral. See, 266 Washington Associates, *supra*, at p. 284, fn.17.

### 5. The Amended Plan Purports to Grant Invalid Third Party Releases to Circumvent Compass Bank's Right to Sue the Debtor's Guarantors.

Finally, the Amended Plan is not confirmable, because it grants invalid third party releases.

Section XIII of the Amended Disclosure Statement, entitled "Post-Confirmation Injunction," provides that,

> No entity may … assert any claim, counter-claim, cross-claim, affirmative defense, defense, set off, recoupment or any action of any kind or nature … against Debtor, *its members, managers, employees,*

> *directors, attorneys, agents, representatives, or any successors or assigns of any or all of the foregoing persons.*

[Emphasis added.]

This release language appears to be an attempt to grant a blanket release of all claims "of any kind or nature" against certain insiders of the Debtor who may also constitute guarantors of the debt owed to Compass Bank. However, it is settled Ninth Circuit law that a plan of reorganization that proposes to release non-debtor guarantors violates Bankruptcy Code Section 524(e) and is unconfirmable. In re Lowenschuss, 67 F.3d 1394, 1402-3 (9th Cir. 1995), *citing* Sun Valley Newspapers, Inc. v. Sun World Corp. (In re Sun Valley Newspapers, Inc., 171 B.R. 71, 77 (9th Cir. B.A.P. 1994); In re American Hardwoods, Inc., 885 F.2d 621 (9th Cir. 1989).

Thus, the release language of Section XIII must be stricken from the Amended Disclosure Statement and from the Amended Plan, and the Amended Plan, as proposed, is not confirmable.

C. **Alternatively, Compass Bank Respectfully Requests An Extension of Time To Make Its Section 1111(b) Election.**

Federal Rule of Bankruptcy Procedure 3014 provides that the election under Bankruptcy Code Section 1111(b) "shall be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix."

Accordingly, if this Court decides to approve the Debtor's Amended Disclosure Statement, Compass Bank respectfully requests that this Court fix, and thereby extend, the time for the making of the 1111(b) election by Compass Bank to a date after the Debtor's requested valuation hearing. The decision of whether or not the election should be made by Compass Bank may hinge on the valuation of its collateral to be made by the Court, so it is premature to do so at this juncture.

## IV.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Compass Bank respectfully requests entry of an order denying approval of the Debtor's Amended Disclosure Statement and, if appropriate, extending the date for Compass Bank to make an election under Section 1111(b) of the Bankruptcy Code.

DATED: August 17, 2010                LEWIS AND ROCA LLP

By    /s/ Laury M. Macauley
    Laury M. Macauley, NV Bar #11413
    Attorneys for Creditor,
    Compass Bank