1  BELDING, HARRIS & PETRONI, LTD.
   STEPHEN R. HARRIS, ESQ.
2  **Nevada Bar No. 001463**
   417 West Plumb Lane
3  Reno, Nevada 89509
   Telephone: (775) 786-7600
4  Facsimile: (775) 786-7764
   Email: steve@renolaw.biz
5  Attorney for Debtor

6

7              UNITED STATES BANKRUPTCY COURT

8                   DISTRICT OF NEVADA

9                        * * * * *

10  IN RE:

11  LESARRA ATTACHED HOMES, L.P.,          Case No. 10-50808
    a Nevada limited partnership,          (Chapter 11)
12

13        Debtor.                          Hrg. DATE:  April 12, 2011
                                           and TIME:   9:30 a.m.
14  _____/          Est. Time:  1 hour
                                           Set By:     Judge Peterson Per OST
15

16          **DEBTOR'S  SECOND AMENDED**

17          **DISCLOSURE STATEMENT**

18  Dated:          March 23, 2011

19  Filed by:       STEPHEN R. HARRIS, ESQ.
                    BELDING, HARRIS & PETRONI, LTD.
20                  417 West Plumb Lane
                    Reno, Nevada 89509
21                  Telephone: (775) 786-7600

22                  Attorneys for LESARRA ATTACHED HOMES, L.P.,
                    a Nevada limited partnership,
23                  Debtor and Debtor-in-Possession

24

25

26

27

28

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-1-

# I. **INTRODUCTION**

LESARRA ATTACHED HOMES, L.P., a Nevada limited partnership, Debtor and Debtor-In-Possession ("Debtor") in the above-captioned Chapter 11 case, provides herewith the information contained in this DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT ("Disclosure Statement") to all known creditors and other parties in interest of the Debtor in order to disclose that information deemed material, important, and necessary to the creditors to arrive at a reasonably informed decision in exercising their rights to vote for acceptance of the Plan of Reorganization.

Together with this DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT, each creditor should also have received a copy of the DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION, a form Ballot on which creditors and other parties in interest who are entitled to vote may cast their respective vote, and a copy of the ORDER APPROVING DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT which indicates that the Bankruptcy Court has approved this Disclosure Statement for circulation to creditors in that it contains information of a kind and of sufficient detail, as far as its reasonably practicable, to enable creditors and other parties in interest to make an informed decision about the Plan. As indicated in the Instructions accompanying the Ballot, which is the form on which you may cast your vote to accept or reject the Plan, the Ballot must be mailed to Debtor's counsel in time to insure that your Ballot will be received by the due date. Ballots received after the due date may not be counted.

You are urged to carefully read this DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT and the DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION before deciding to accept or reject the PLAN. Particular attention should be directed to the provisions of the Plan affecting your rights as well as the Liquidation Analysis which describes the results which would be obtained in the event the Debtor's business is discontinued and its assets liquidated.

## II. **THE CHAPTER 11 CONFIRMATION PROCESS**

The Chapter 11 Confirmation Process is governed, in large part, by the Bankruptcy Code. Under the Bankruptcy Code, to be confirmed, the DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION must be accepted by at least one Class of Creditors whose claims against the Debtor will be "impaired" under the Plan. Claimants who are scheduled to receive full payment on

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-2-

their Claims are deemed to have accepted the Plan and do not vote. Only Creditors whose Claims are "impaired" are entitled to vote in favor of accepting or rejecting the Plan. A Class of claim is "impaired" if the amount to be paid to the Class provides the Claimants in that Class with less than full payment of the Allowed Claims in that Class. Acceptance by such Class requires that at least one-half of the Creditors in the Class who cast accepting votes on the Plan, and hold at least two-thirds of the total dollar amount of the Claims in that Class casting votes on the Plan.

## III. DISCLAIMER

**NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS FUTURE BUSINESS OPERATIONS OR VALUE OF PROPERTY, ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN OF REORGANIZATION WHICH ARE NOT CONTAINED HEREIN OR IN THE PLAN OF REORGANIZATION SHOULD NOT BE RELIED ON BY ANY CREDITOR OR OTHER PARTY IN INTEREST. ALTHOUGH THE FINANCIAL INFORMATION CONTAINED HEREIN IS BELIEVED TO BE ACCURATE, IT HAS NOT BEEN SUBJECTED TO ANY CERTIFIED AUDIT AND IS NOT WARRANTED OR REPRESENTED TO BE ERROR FREE.**

## IV. DEBTOR'S FINANCIAL HISTORY

Lesarra Attached Homes, L.P. was created for the purpose of developing and selling residential real estate in El Dorado Hills, California. The Lesarra community opened for sales on May 19, 2007. At this point in time, the Sacramento real estate market had been on a massive downward trend since its high in July 2005. However, at the time, the El Dorado Hills local market did not appear to have the same inventory and employment problems that were clearly evident throughout much of the Greater Sacramento metro sales area. Additionally, the proximity of the Lesarra community to the El Dorado Hills Town Center and the Blackstone Master-Plan put the Lesarra community in middle of an extremely attractive and high traffic local.

The Lesarra initial sales center was established in what was the ERA Residential Real Estate Building, located directly in the El Dorado Hills Town Center. At that time, the first building that was to be home to the permanent sales center was still under construction. Consequently, the Debtor was selling units off of marketing displays, brochures and blueprints. Over the next three months, prior to the opening of the models, Lesarra sold a total of 6 homes, all of which were sold in the first month of operations within the Town Center. It was also during that time that the Debtor became aware of

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-3-

certain negative local sentiment regarding the "Section 42" Whiterock Apartments that are located directly adjacent to the Lesarra community.

The discovery of the safety/police issues regarding the Whiterock Apartments prompted the Debtor to revise its plan to include a remote access gate that would surround the Lesarra community. It also caused the Debtor to begin to reevaluate the pricing at the Lesarra community for the first time; however, the Debtor continually kept its pulse on the market and believed its properties were priced fairly in relation to the sparse competition that existed in its market. Moreover, the Debtor did not want to make any binding decisions two months prior to the opening of the model homes. Given the historical evidence gathered over the prior year of sales in the new market, the Debtor realized it would be very difficult for its prospective buyers to make a buying decision until they were able to see the final product.

The models at Lesarra opened during the second week of October 2007. As the date drew closer to the model opening, the Debtor realized that it would have to adjust its pricing slightly to bring it more in line with the market. During its first month, the Debtor had over 500 visitors in its model homes, with twelve new reservations. The Debtor believed it would continue to be successful at the Lesarra community now that prospective buyers could see its end product. The Lesarra community experienced another big sales month in November 2007, with another eighteen new reservations, however, sales began to slow down considerably in December 2007.

The Debtor implemented various innovative sales and marketing strategies to drive sales, including a "Life Experience" campaign where every visitor to the Lesarra community that filled out a guest card was entered into a drawing to win an unparalleled life experience, such as a trip to the Richard Petty driving school in Las Vegas and a cruise in the Mediterranean Sea.

Another marketing tool was the WhatTheHeckAreYouWaitingFor.com campaign where the Debtor gave prospective buyers three different purchase options. A buyer could rent to own, just rent, or buy at a discounted price, with different incentives tied to each scenario.

The "Life of the Project Price Guarantee" was the Debtor's last effort to move inventory in a market that had gone completely stagnant. At that time, there were a number of builders, including the Debtor, that were guaranteeing the pricing of the buyers' home through the escrow process so that

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

- 4 -

in the event a price decrease occurred before they closed escrow on their home, the buyer in escrow would get the benefit of that pricing adjustment. The Debtor's concept was to take all of the risk for the buyers out of the transaction by guaranteeing the homeowner that the Debtor would not lower the price on their home, and if that did happen, the buyer would be compensated for the price adjustment and lost equity. While the Debtor's marketing efforts worked as well as could be expected at that time, the collapse of the sub-prime lending industry, the tightening of conventional loan guidelines, the recession, Wall Street's collapse and the new market of short-sales and repossessed homes all worked together to create an atmosphere that the Debtor could not compete against in order to sell its inventory at a level required to maintain profitability.

As a result of the foregoing, the Debtor ceased its sales efforts at the Lesarra community in September 2009. Forty of the fifty-five completed units had been sold and closed escrow and 5 sales were still pending in escrow. The Debtor gave the five pending buyers the option to cancel their purchases for a full refund, or opting to stay in an extended escrow. All but one buyer elected to cancel their purchase given the uncertainty of their closing timeline.

Due to the Debtor's inability to continue servicing its secured debt, on March 12, 2010, the Debtor filed its voluntary petition for Chapter 11 relief in order to have an opportunity to reorganize its business affairs and debt structure to maximize the value of its assets for the benefit of its creditors.

## V. DESCRIPTION AND VALUATION OF ASSETS

Debtor is the owner of certain improved real property consisting of fifteen (15) completed condominium units and garage units ("Completed Units"), and one hundred five (105) unbuilt units and garages ("Unbuilt Units") coupled with common areas, located at 2230 Valley View Parkway, El Dorado Hills, California. Based upon the monies that the Debtor invested in the Lesarra Project, Debtor estimates total added soft costs of approximately $9,504,053.00 and total value added hard costs of $10,133,049, for total professional services, site work, foundations, permits, fees and taxes of $19,634,402.00. The unrealized accounting value remaining for the existing one hundred twenty (120) unsold Units and garages is $14,725,801.00 or more. Notwithstanding this sizeable investment, the present fair market value of the Property, calculated as of August/September 2010, was estimated in a range of $2,500,000 to $5,000,000, in as-is and where-is condition, which includes the 105

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-5-

unbuilt units and garages and 15 completed condominium units and garages, coupled with common areas. On December 15, 2010, the Court verbally decreed its order fixing the value for the Property at $3,500,000.00.

## VI. SIGNIFICANT POST-PETITION EVENTS

On May 18, 2010, secured creditor Compass Bank filed its COMPASS BANK'S MOTION FOR RELIEF FROM AUTOMATIC STAY [11 U.S.C. .§362] requesting relief from the automatic stay in order to proceed with enforcement of its rights against the Debtor's real property, as its collateral. The Motion was denied without prejudice on June 22, 2010, and will be reset for hearing at the same date and time for the §1125 Disclosure Statement approval hearing on the DEBTOR'S FIRST AMENDED DISCLOSURE STATEMENT, now in the form of the DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT. The §1125 Disclosure Statement Hearing was set for August 31, 2010, at 2:00 p.m. The DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT was filed on August 5, 2010. On July 15, 2010, the Debtor delivered a $40,000 cashier's check to Compass Bank, as and for the adequate protection payment that was ordered to be paid by the Court on June 22, 2010. No other adequate protection payments will be paid to Compass Bank, unless the Court orders the same. On March 9, 2011, Compass Bank filed COMPASS BANK'S RENEWED MOTION FOR RELIEF FROM STAY [11 U.S.C. §362], [Docket No. 91], with a hearing to be conducted on April 12, 2011, at 9:30 a.m.

## VII. ADMINISTRATIVE AND UNCLASSIFIED CLAIMS

**ADMINISTRATIVE CLAIMS:** All costs and expenses of administration in this case, including any actual and necessary expenses of preserving or liquidating the assets of the Debtor's estate, all allowances, including professional fees and costs, approved by the Court, and any other costs and expenses entitled to priority pursuant to 11 U.S.C. § 507(a)(1) of the Bankruptcy Code and 28 U.S.C. § 1930, shall be paid in full on or before the Effective Date of the Plan. The holders of these claims include the attorneys and accountants for the Debtor, unpaid post-petition accounts payable (if any), and all fees to be paid to the Office of the United States Trustee. The estimated administrative expenses for the Debtor's reorganization proceeding are $100,000.00; and consist of:

$        0.00        Trustees fees that are owed the U.S. Trustee's Office for the

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

| | | |
|---|---|---|
| | | applicable quarters of 2010 prior to plan confirmation [payment is anticipated to be made when due]; |
| $ | 100,000.00 | Estimated professional fees for the Debtor's general bankruptcy attorney Stephen R. Harris, Esq., of BELDING, HARRIS & PETRONI, LTD., calculated as of the date of confirmation, which fees shall not be paid by the Debtor. |
| $ | 0.00 | Post-petition accounts payable with [all post-petition administrative expenses are expected to be paid in full in the normal course of business prior to confirmation]. |

Professional fees, both legal and accounting, shall continue to accrue up through and subsequent to the Confirmation Date, with final amounts owing subject to Court approval.

### UNCLASSIFIED PRIORITY CLAIMS:

<u>UNCLASSIFIED PRIORITY CLAIMS</u>:

**1. <u>Priority Claims</u>**. The Debtor's priority claims are as follows:

| Name | Scheduled Amount | Proof of Claim Amount | Allowed Priority Amount |
|---|---|---|---|
| City of Reno | $240.00 | | $240.00 |
| El Dorado County Water Meter Fee | $213.00 | $213.00 | $213.00 |
| Franchise Tax Board | $0.00 | $2,528.12 | $2,528.12 |
| Franchise Tax Board | $800.00 | $800.00 | $800.00 |
| **Total:** | **$1,253.00** | **$800.00** | **$3,781.12** |

Pursuant to the Debtor's Plan, the treatment and disposition of the unclassified priority tax claims will be as follows: Any claim discrepancy will be resolved by the claim objection process, with the stipulated amount and/or Court decreed amount owing used to calculate that particular creditors' allowed claim being paid by the Debtor.   All unclassified priority tax creditors shall be paid 100% of their allowed claim amount, with statutory interest thereon, on or before the Effective Date of the Plan. In the event the Debtor fails to make the payments as set forth hereinabove, the allowed priority tax creditors shall have the right to proceed with any administrative remedies available to them, fifteen (15) days after written notice of default has been given to the Debtor and its attorney, Stephen R. Harris, Esq.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

- 7 -

ARTICLE IV.

CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, claims against the estate have been divided into the following classifications for purposes of administration and voting on the Plan:

1. CLASS 1 SECURED CLAIM **(COMPASS BANK)**: Class 1 consists of the secured claim of COMPASS BANK ("Compass"), formerly doing business as GUARANTY BANK, in the approximate claim amount of $18,125,152.31, plus accruing interest at the contractual rate, calculated as of the Petition Date. Compass Bank filed a "secured" Proof of Claim on July 16, 2010, for $18,125,934.00. Compass Bank retains its existing security interest as evidenced by its first deed of trust recorded upon improved real property consisting of fifteen (15) completed condominium units, seventeen (17) complete garage units and partially improved real property consisting of one hundred five (105) condominium units, and fifty-nine (59) garage pads, with foundations only, which condominium units, garage and common areas are located at 2230 Valley View Pkwy, El Dorado Hills, CA (collectively referred to as "Property" or "Lesarra").

2. CLASS 2 SECURED CLAIM **(ORA RESIDENTIAL INVESTMENTS I, L.P.)**: Class 2 consists of the secured claim of ORA RESIDENTIAL INVESTMENTS I, L.P. ("ORA"), in the approximate claim amount of $9,950,400.64, plus accruing interest at the contractual rate. This claim is secured by a second deed of trust recorded upon improved real property consisting of fifteen (15) completed condominium units and garages and partially improved real property consisting of one hundred five (105) units and garages with foundations only, which condominium units, garages and common areas are located at 2230 Valley View Pkwy, El Dorado Hills, CA (collectively referred to as "Property" or "Lesarra").

3. CLASS 3 SECURED CLAIM **(LESARRA HOMEOWNERS ASSOCIATION)**: Class 3 consists of the secured claim of LESARRA HOMEOWNERS ASSOCIATION, C/O CAMS, INC. ("Lesarra HOA"), in the approximate amount of $85,373.22, plus unpaid homeowners' fees estimated in an additional sum of $20,000.00 accruing through the Confirmation Date, for a total of $105,373.22. This claim is secured by a statutory lien upon improved real property consisting of fifteen (15) completed condominium units, garages and partially improved real property consisting

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

- 8 -

of one hundred five (105) units and garages with foundations only, which condominium units, garages and common areas are located at 2230 Valley View Pkwy, El Dorado Hills, CA (collectively referred to as "Property" or "Lesarra").

    4.   CLASS 4 SECURED CLAIM (**EL DORADO COUNTY TREASURER & TAX COLLECTOR** ):   Class 4 consists of the secured claim of the EL DORADO COUNTY TREASURER AND TAX COLLECTOR ("El Dorado County"), in the approximate amount of $116,400.00, for unpaid real property taxes owing through the Confirmation Date. This claim is secured by a statutory property tax lien upon improved real property consisting of fifteen (15) completed condominium units, garages and partially improved real property consisting of one hundred five (105) units and garages with foundations only, which condominium units, garages and common areas are located at 2230 Valley View Pkwy, El Dorado Hills, CA (collectively referred to as "Property" or "Lesarra").

    5.   CLASS 5 CLAIMS (**GENERAL UNSECURED CREDITORS**): Class 5 consists of all allowed general unsecured claims against the Debtor and disputed claims, to the extent disputed claims may be proven and allowed by the Court. The aggregate amount of the Class 5 General Unsecured Claims is approximately $544,171.92, scheduled as follows:

| Creditor Claims: | Schedule Amount | Proof of Claim Amount | Allowed Amount |
|---|---|---|---|
| A & H Insurance, Inc. | $976.58 | | $976.58 |
| Anders | $57,000.00 | | $57,000.00 |
| Apgar | $42,000.00 | | $42,000.00 |
| AT&T | $763.51 | | $763.51 |
| Brownie's Digital Imaging | $101.48 | $101.48 | $101.48 |
| Brucia | $57,000.00 | | $57,000.00 |
| CJs Plumbing, Inc. | $137,500.00 | | $137,500.00 |
| Collins Drywall, Inc. | $66,000.00 | | $66,000.00 |
| Comcast Cable | $175.36 | | $175.36 |
| Disney | $0.00 | | $0.00 |

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
Reno,
NEVADA 89509
(775) 786-7600

| | | | |
|---|---|---|---|
| Franchise Tax Board | $0.00 | $532.03 | $532.03 |
| Gallardo | $0.00 | | $0.00 |
| ISTA | $93.96 | | $93.96 |
| J.O. Hazzard Subdivision | $2,423.00 | $2,423.00 | $2,423.00 |
| McCall | $0.00 | | $0.00 |
| Media Directions | $6,110.00 | | $6,110.00 |
| Miller | $33,000.00 | | $33,000.00 |
| Raulino, Richard | $4,200.00 | $4,200.00 | $4,200.00 |
| Tileco of California | $85,000.00 | | $85,000.00 |
| Walker | $0.00 | | $0.00 |
| Wyatt | $51,000.00 | | $51,000.00 |
| Yellow Pages United | $296.00 | | $296.00 |
| **Total Unsecured Claims:** | **$543,639.89** | | **$544,171.92** |

The schedule of general unsecured claims above does not include the Class 1 and Class 2 claims that do not attach themselves to equity on the Property.

6.  CLASS 6 **INTERESTS** OF DEBTOR:  In Class 6 under this Plan, the Debtor classifies the equity interests of LESARRA ATTACHED HOMES, L.P., as the partners, described as follows: PACIFIC WEST CAPITAL GROUP as to a 49% limited partnership interest; Nexstar Communities, LLC as to a 25% limited partnership interest; JLP Ventura Capital, LLC as to a 25% limited partnership interest; and Lesarra Associates, LLC as to a 1% general partnership interest.

ARTICLE V.

TREATMENT OF CLASSES

1.  CLASS 1 SECURED CLAIM (**COMPASS BANK**):  Compass Bank shall retain its existing security interest as evidenced by its first deed of trust recorded upon improved real property consisting of fifteen (15) completed condominium units and some garages and partially improved real property consisting of one hundred five (105) units and garage pads with foundations only, which condominium units, garages and common areas are located at 2230 Valley View Pkwy, El Dorado Hills, CA (collectively referred to as "Lesarra Units" or "Units" or "Property").  The Class 1 secured

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-10-

creditor shall be paid the secured portion of its claim established by the Court at $3,500,000.00. Given the valuation of the Property by the Bankruptcy Court, that sum of money shall be paid to the Class 1 Secured Creditor Compass Bank, as the "indubitable equivalent" of its claim, by related parties of the Debtor, pursuant to §1129(b)(2)(A)(iii). The secured portion of $3,500,000.00 owing the Class 1 Secured Creditor Compass Bank shall be paid by a related party to the Debtor within five (5) years of the Confirmation Date or on sale of the Property, whichever is first to occur, by the related party contributing "new equity" into the Debtor, with the Class 1 Secured Claim bearing interest at 4% per annum from the Confirmation Date until paid. There will be no credit bid option available to the Class 1 Secured Creditor. Any unpaid portion of the Class 1 Secured Claim shall be treated as an unsecured claim and paid 2% of the unsecured portion estimated $14,500,000.00, according to the treatment for classified Class 5 General Unsecured Creditor claims.

Accordingly, the Class 1 Secured Claim is impaired under the Plan.

2. CLASS 2 SECURED CLAIM **(ORA RESIDENTIAL INVESTMENTS I, L.P.**: ORA Residential Investments I, L.P. shall retain its existing security interest as evidenced by its second deed of trust recorded upon improved real property consisting of fifteen (15) completed condominium units and some garages and partially improved real property consisting of one hundred five (105) units and garage pads with foundations only, which condominium units, garages and common areas are located at 2230 Valley View Pkwy, El Dorado Hills, CA (collectively referred to as "Lesarra Units", "Units" or "Property"). The Class 2 secured creditor shall be paid zero on the secured portion of its claim by reason of the $3,500,000.00 value placed on the Property by the Court. The unsecured portion of the Class 2 claim shall be paid 2% according to the treatment for Class 5 General Unsecured Claims.

Accordingly, the Class 2 Secured Claim is impaired under the Plan.

3. CLASS 3 SECURED CLAIM **(LESARRA HOMEOWNERS ASSOCIATION)**: Lesarra HOA shall be paid in full by El Dorado Enterprises in accordance with California state law and applicable covenants, conditions and restrictions concerning assessments and liens of the unpaid homeowners' association dues and transfer fees, six (6) months after the Effective Date of the Plan.

Accordingly, the Class 3 Secured Claim is impaired under the Plan.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

4.   CLASS 4 SECURED CLAIM (**EL DORADO COUNTY TREASURER & TAX COLLECTOR**): El Dorado County shall be paid in full by Ed Dorado Enterprises in accordance with California state law and applicable covenants, conditions and restrictions concerning assessments and liens of the unpaid real property taxes six (6) months after the Effective Date of the Plan.

Accordingly, the Class 4 Secured Claim is <u>impaired</u> under the Plan.

5. CLASS 5 CLAIMS (**ALLOWED GENERAL UNSECURED CREDITORS**):  The Class 5 General Unsecured Allowed claims (totaling $544,171.92), plus the unsecured portion of the Class 1 and Class 2 Claims, shall be paid 2% of their allowed claims, within five (5) years after the Confirmation Date.

Accordingly, the Class 5 Unsecured Claims are <u>impaired</u> under the Plan.

6.   CLASS 6 **PARTNERSHIP INTERESTS** OF DEBTOR: Pursuant to this Plan, the Class 6 Partnership Interests of the Debtor shall be substituted in by a related party making "new value" contributions to their existing general or limited partnership interests in the Debtor. Accordingly, the Class 6 Interest Holders are <u>unimpaired</u> under the Plan.

7.   **Bar Date for Filing Claim**: The bar date for filing a proof of claim in this case is July 19, 2010, for all creditors (except a governmental unit).  The bar date for objecting to claims will be sixty (60) days after the date on which the Plan is confirmed by the Court.  All priority unsecured and general unsecured claims which are listed as disputed in this Plan or who believe that the amounts listed in this Plan are incorrect, shall file proofs of claim in this case by the bar date set forth above. Failure to file a proof of claim by a disputed claimant or a claimant who disagrees with the amount listed in this Plan within such time period will result in the amount listed in this Plan being established as the amount owing to such creditor, and such creditor will participate in the Plan, based upon its claim listed in this Plan.

ARTICLE VI

TREATMENT OF EXECUTORY CONTRACTS,
UNEXPIRED LEASES AND DISPUTED CLAIMS

1. EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

LESARRA ATTACHED HOMES, L.P. is not aware of any executory contracts or unexpired leases it is a party to at this time.  All executory contracts and unexpired leases not

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-12-

specifically assumed or rejected as of the Confirmation Date or as to which an application to assume or reject shall not be pending on the Confirmation Date shall be deemed rejected by the Debtor.

2.  <u>DISPUTED CLAIMS</u>.

Through its Disbursing Agent, the Debtor will only make distributions according to the Plan and when their claims become allowed claims and interest as such terms are defined in the Plan. There are currently claims pending against the Debtor, either filed or scheduled, which are or will become Disputed Claims.  As to some Disputed Claims, the Debtor disputes only the classification of the claims asserted by the holder.  With respect to other Disputed Claims, the Debtor accepts the classification asserted by the holder but disputes the amount of the claim alleged by such holder.  In some cases, the Debtor disputes both the asserted classification and the alleged amount.  In addition, the Debtor and other parties in interest may object to certain other claims based upon equitable or contractual subordination pursuant to § 510 of the Bankruptcy Code.  Specifically, such subordination claims may be asserted against any person or entity buying claim(s) for speculation and profit in Debtor's bankruptcy case.  No distribution will be made with respect to any such Disputed Claims unless and until they become allowed claims. Debtor LESARRA ATTACHED HOMES, L.P., disputes the following claims at this time:  None.

ARTICLE VII.

<u>STATEMENT OF IMPAIRMENT</u>

There are five (5) classes impaired under the Plan, those being Class 1, Class 2, Class 3, Class 4 and Class 5.  Class 6 is unimpaired, and therefore not entitled to vote.

ARTICLE VIII.

<u>MEANS FOR EXECUTION OF THE PLAN</u>

1.  **Sale of Property and Disbursements Therefrom**

El Dorado Enterprises shall lend monies to the Debtor in sufficient amount to pay the $40,000 adequate protection payment due Compass Bank on or before July 15, 2010, and no other adequate protection payments shall be paid thereafter.  Further, El Dorado Enterprises shall contribute additional monies of $300,000.00 to acquire the Class 6 equity partnership interests of the Debtor, which monies will be used to improve the Property for ultimate sale.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

- 13 -

### 2. Rights of Class 1 Creditor to Credit Bid

Class 1 and Class 2 creditors do not have any right to credit bid pursuant to the holding established in In re Pacific Lumber Co., 584 F. 3d 229 (5th Cir. 2009), in addition to the fact that the Court has valued the Property at $3,500,000.00.

### 3. Valuation of Lesarra Units

Valuation for the Lesarra Property is $3,500,000.00, as established by the Court.

### 4. Explanation of Ability of El Dorado Enterprises to Perform Under Purchase

El Dorado Enterprises will be owned by Scott Mencaccy, or a related entity. El Dorado Enterprises has access to $300,000.00, in order to acquire the Class 6 ownership interests in the Debtor.

### 5. The 1111(b) Election

The §1111(b) election is not available to either the Class 1 or Class 2 secured creditors, given the value established for the Property by the Court, pursuant to 11 U.S.C. §506(b).

### 6. Post-Confirmation Default

In the event the Debtor becomes delinquent in duty or obligation under the Plan, the affected creditor or creditors may provide written notice of such default to the Debtor and its counsel. The Debtor shall thereafter have five (5) business days from receipt of said notice in which to cure the default. In the event such default remains uncured, the affected creditor or creditors shall be entitled to foreclose upon the real property (if a secured creditor) or take other appropriate action. The Debtor shall have the right to bring the issue of default before the Bankruptcy Court. At any hearing, the Bankruptcy Court may consider the reason for the default and the ability of the Debtor to cure the default in a reasonable period of time. The Bankruptcy Court may also consider conversion of the case to a Chapter 7 of the Bankruptcy Code or dismissal of the same is in the best interest of creditors.

### 7. Professionals' Fees

After the Confirmation Date of the Plan, the Debtor and any other professional, such as Debtor's general bankruptcy counsel and any special purpose counsel, will not be required to apply to the Court for compensation for services rendered post-confirmation. Post-confirmation compensation of the Debtor's professionals shall be at their normal hourly rate(s) and customary cost

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

- 14 -

charges.

### 8. **Distribution**

All cash proceeds shall be distributed in the foregoing manner except amounts necessary to pay disputed claims against the Debtor in the event they are allowed, which shall be held as a reserve and paid as such claims are determined by agreement between the parties or as are judicially determined.

### 9. **Taxes**

Unless otherwise provided in the Plan, all taxes are paid current and there are no tax liens on real or personal property owned by the Debtor.

## XII. <u>PROVISIONS GOVERNING DISTRIBUTION AND DISCHARGE</u>

<u>Effect of Confirmation</u>. The payments, distributions and other treatments provided in respect of each Claim and Interest in the Plan shall be in full settlement and in complete satisfaction, and release of each such Claim and Allowed Claim and each Interest, except ans otherwise provided in this Plan or the Order confirming this Plan (the "Confirmation Order"). The confirmation Order acts as a discharge, as of the Effective Date, of any and all debts of the Debtor and of administrative claims or expenses under §503 of the Code, including, but not limited to, all principal and interest, whether accrued before or after the Petition Date, on all such debts, pursuant to the provisions of Code §1141(d). The discharge of the Debtor shall be effective as to each Claim, Allowed Claim, and Interest, regardless of whether a Proof of Claim was filed, whether the Claim or Interest is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

<u>Disputed Claims</u>. Notwithstanding any other provision of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distribution in respect of any Claim or Interest which at such date or time is disputed, unliquidated or contingent shall not be made until such Claim or Interest becomes an Allowed Claim or an Allowed Interest, whereupon such payments and distributions shall be made promptly pursuant to and in accordance with this Plan.

<u>Time of Payments</u>. Payments and distributions pursuant to this Plan shall be made by the Disbursing Agent as provided herein and shall be made, unless otherwise provided herein, on the Effective Date, or as soon as practicable thereafter, or as may be otherwise ordered by the court.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

No Payments to Pre-Petition Interests. No payments or distribution shall be made under the Plan to any and all persons holding an Interest in the Debtor prior to confirmation except as may be provided herein.

Manner of Payments. Payments under this Plan will be made by check, mailed with first class postage pre-paid, to the holder of each Allowed Claim at the address listed on its Proof of Claim or, if no Proof of Claim has ben filed by the date of the hearing on confirmation of this Plan, to the address listed in the Debtor's Schedules. Whenever any payment or distribution to be made under this Plan shall be done on a day other than a business day, such payment or distribution shall instead be made, without interest, on the next following business day. In the event a payment or distribution is returned to the Debtor, the same will be held by the Debtor for a period of six months after being returned to the Debtor. If not claimed by the payee or distributee within such six month period, the amount of such payment or distribution shall become the property of the Debtor.

Payment in Complete Satisfaction. All consideration and payments provided under this Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims of any nature whatsoever against the Debtor and Debtor-In-Possession or any of its assets or properties; and, except as may be otherwise provided herein, upon the confirmation Date, all Claims against the Debtor or Debtor-In-Possession shall be satisfied, discharged and released in full; and all holders of Claims and Interests, shall be precluded from asserting against the Debtor, its assets, properties, or interests held by it, any other or future claim based upon an event that occurred or an indebtedness that arose prior to the Confirmation Date.

Untimely Claims. Claims not timely filed will not participate in any payment to holders of Allowed Claims and will be discharged under Code §1141(d), unless otherwise ordered by Court.

No Levies. The payments or distributions that are made to the various Classes of Creditors and on account of administrative expenses and priority Claims hereunder shall not be subject to levy, garnishment, attachment or like legal process by any Creditor or administrative expense claimant or holder of any Interest or a senior class of Creditors by reason of claimed contractual subordination rights, so that each administrative expense claimant will have received the benefit of the distribution set forth in this Plan.

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

Title to Assets. Pursuant to 11 U.S.C. §1141 upon confirmation, title to all assets and properties whatsoever of the Debtor and Debtor-In-Possession shall be retained by and revest in the Debtor free and clear of all claims, liens, security and equitable interests, except as may be otherwise provided by this Plan. The order confirming the Plan shall be a judicial determination of the discharge of the liabilities of and claims against the Debtor and Debtor-In-Possession, except only as may be otherwise provided for in this Plan.

## XIII. **POST-CONFIRMATION INJUNCTION**

No entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of this Plan and the payments to be made hereunder; or (ii) assert any claim, counter-claim, cross-claim, affirmative defense, defense, set off, recoupment or any action of any kind or nature (collectively "Potential Actions") against Debtor, its members, managers, employees, directors, attorneys, agents, representatives, or any successors or assigns of any or all of the foregoing Persons.

Confirmation of the Plan shall constitute a permanent injunction against and irrevocable release of any and all Potential Actions.

## XIV. **EXECUTORY CONTRACTS**

Reservation of Rights. The Debtor reserves the right to assume or reject, pursuant to §365 of the Code, any executory contract or unexpired lease not assumed or rejected prior to the Confirmation Date. All executory contracts and unexpired leases not specifically assumed or rejected as of the Confirmation Date or as to which an application to reject shall not be pending on the Confirmation Date shall be deemed rejected by the Debtor.

## XV. **MISCELLANEOUS PROVISIONS**

Notice. Any notice described in or required by the terms of this Plan or the Code and Rules shall be deemed to have been properly given when actually received or if mailed, five days after the date of mailing, if such shall have been sent by certified mail, return receipt requested, and if sent to:      The Debtor, addressed to:

STEPHEN R. HARRIS, ESQ.
BELDING, HARRIS & PETRONI, LTD.
417 West Plumb Lane
Reno, NV 89509

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

Headings.  the headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

Severability.  Should any provision of this Plan be determined to be unenforceable following the Effective date, such determination shall in no way limit or affect the enforceability of any and all other provisions of this Plan.

Governing Law.  Except to the extent that the Code or other applicable federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by and construed in accordance with the laws of the State of Nevada.

Successors and Assigns.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors and assigns of such person.

Designation of Corporate Officers.  Those individuals who were duly appointed as managers of the Debtor as of the Petition Date, shall continue to serve in the office to which they were elected by the partners of the Debtor.  Specifically, William D. Pennington, II and John Burkett shall continue to act as co-managers of the Debtor and shall not be compensated for their services in managing the Debtor's business affairs throughout this Chapter 11 proceeding.

## XVI. PROCEDURES FOR RESOLVING CONTESTED CLAIMS

Claims Objections.  Objections to Claims shall be filed with the Court and served upon each holder of a Claim to which objection is made no later than sixty (60) days after the Confirmation Date.

Payment Procedures.  Payments to the holder of a Claim to which objection has been made that ultimately becomes an Allowed Claim shall be made in accordance with the provision of this Plan with respect to the Class of Creditors to which the holder of such an Allowed Claim belongs. However, interest, if any, on any funds reserved for a contested claim shall inure to the benefit of the holder of such an Allowed Claim.  Any payment due to the holder of any Claim to which objection was made but such Claim pursuant to Article V of the Plan, but in accordance with payments to

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-18-

holders of other Claims in the same Class.

Avoidance Actions.  To the extent appropriate, the Debtor shall have the right to bring any and all avoidance actions, the same to be commenced with 90 days of the Confirmation date. Proceeds of all avoidance actions shall vest in the Debtor pursuant to 11 U.S.C. §1141.

## XVII. **CONFIRMATION REQUEST**

The Debtor requests that this Plan be confirmed in accordance with the provisions of §1129(a) and/or §1129(b) of the Code.

## XVIII. **RETENTION OF JURISDICTION**

Notwithstanding confirmation of this Plan, the Court will retain jurisdiction for the following purposes, and each of them:

1.    The Court will retain jurisdiction to determine the allowability and payment of any claim(s) upon any objection(s) thereto (or other appropriate proceedings) by the Debtor or by any other party in interest entitled to proceed in that manner.  As part of such retained jurisdiction, the Court will continue to determine the allowability of Administrative Claims and any request(s) for payment(s) thereof, including professional fees and costs which are Administrative Claims.

2.    The Court will retain jurisdiction to determine any dispute(s) which may arise regarding the interpretation of any provision(s) of this Plan.

3.    The Court will retain jurisdiction to facilitate the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate order(s) regarding the enforcement of this Plan and any provision(s) thereof.

4.    The Court will retain jurisdiction to adjudicate any cause(s) of action or other proceeding(s) presently pending or otherwise referenced here or elsewhere in this Plan, including, but not limited to, the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b), which may be pertinent to this Reorganization Case, and which the Debtor may deem it appropriate to initiate and prosecute in aid of its reorganization.

5.    The Court will retain jurisdiction to enter an appropriate final decree in this Reorganization Case.

6.    The Court will retain jurisdiction to enter an appropriate final decree, and any

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-19-

interim order(s), in any adversary proceedings which may be initiated during this Chapter 11 proceeding.

## XIX. FEASIBILITY OF DEBTOR'S PLAN

Debtor believes that this Plan is feasible based upon the sale of its real property assets as outlined hereinabove.

## XX. LIQUIDATION ANALYSIS

Debtor is proposing a liquidating Plan where all assets of the Debtor will be liquidated over five (5) years.

In addition to the allowed unsecured claims held by insiders and non-insiders, referenced in the Plan, the Debtor disputes the following claims: None.

Assuming the Debtor had to pay out all of the monies outlined above, including those monies being asserted by the disputed creditors, the Debtor would be left the approximate sum of $0.00 for distribution to its partners' equity interests.

Respectfully submitted this 23rd day of March, 2011.

STEPHEN R. HARRIS, ESQ.
BELDING, HARRIS & PETRONI, LTD.

/s/ *Stephen R. Harris, Esq.*

_____

Attorney for Debtor

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-20-

## V E R I F I C A T I O N

Under penalty of perjury, the undersigned declares that he WILLIAM D. PENNINGTON, II, Co-Manager Lesarra Associates, LLC, General Partner of the Debtor named in the foregoing **DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT** and knows the contents thereof; that the contents are true of his own knowledge, except as to those matters stated on information and belief, and that as to such matters he believes them to be true.

Dated this 23rd day of March, 2011.


WILLIAM D. PENNINGTON, II, Co-Manager
Lesarra Associates, LLC, General Partner

LAW OFFICES OF
BELDING, HARRIS
& PETRONI, LTD.
ATTORNEYS AT LAW
417 WEST PLUMB LANE
RENO,
NEVADA 89509
(775) 786-7600

-21-